IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

WACO DIVISION

| | |
|---|---|
| VOIP-PAL.COM, INC.<br><br>Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>Defendants. | Case No. 6:21-cv-674-ADA<br>PUBLIC VERSION |

**PLAINTIFF VOIP-PAL.COM'S REPLY IN SUPPORT OF PLAINTIFF VOIP-PAL.COM'S MOTION TO STRIKE AND EXCLUDE PORTIONS OF T-MOBILE'S EXPERT INVALIDITY REPORT AND EXPERT TESTIMONY FOR FAILURE TO MEET APPLICABLE DISCLOSURE REQUIREMENTS**

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................................2

II.  REPLY TO FACTUAL BACKGROUND ...........................................................................3

    A.  T-Mobile Failed to Disclose Narrowing of Its Prior Art Until Service of Expert Reports and Provided Suspect Documents. ................................................................3

    B.  T-Mobile Relies on Incompetent and Unauthenticated Evidence. ..............................6

III. REPLY TO ARGUMENT ....................................................................................................7

IV.  CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Personalized Media Communications, LLC v. Apple, Inc.,*
  No. 2:15-cv-01366-JRG-RSP 2021 WL 2696662 (E.D. Tex. Feb. 23, 2021).,...........................7

*Rec Software USA, Inc. v. Bamboo Sols., Corp.,*
  No. 2:11-cv-554, Dkt. 281 (W.D. Wash. Aug. 15, 2012)..............................................................8

*United States v. Arce,*
  997 F.2d 1123, 1128 (5th Cir.1993)................................................................................................6

**Rules**

Fed.R.Evid. 901 ................................................................................................................................6

I.       INTRODUCTION

To prove invalidity, a defendant in a patent case has the option of selecting from two categories of prior art: patents/printed publications and prior art systems. T-Mobile selected a prior art system it labels HotSpot@Home. T-Mobile has, however, a big problem. It has produced hardly any evidence on the prior art system and certainly not clear and convincing evidence. Belatedly realizing its problem, T-Mobile came up with a bold plan: transform what should be facts about a prior art system into facts about printed publications. This strategy segues into having its expert testify that these printed publications show that the HotSpot@Home prior art system circa 2006 is "materially identical" to the present system accused of infringement. The gamesmanship attempted by T-Mobile to essentially replace a prior art system with printed publications is breathtaking. As discussed in VoIP-Pal's opening brief, T-Mobile identified HotSpot@Home in its final invalidity contentions along with a chart that relied on one confidential, internal preliminary design document; a confidential email; and a technical specification from a third-party group.

Putting all of its eggs in the HotSpot@Home basket and failing to provide relevant evidence during fact discovery on the operation of a real-world system, T-Mobile now seeks to fill the vacuum by replacing the HotSpot@Home prior art system with the UMA specification, a list of requirements created by a private, third-party consortium (having T-Mobile as a member), and five specifications created by the 3rd Generation Partnership Project (3GPP) technical group, the 3GPP printed publications entering the case for the first time through the report of T-Mobile's technical expert, Mr. Proctor. T-Mobile could have asked for leave of court to amend its invalidity contentions to add additional published prior art but chose not to do so. Instead, T-Mobile decided to sneak this new material into its expert's report. Respectfully, the Court should exclude this

2

material in the expert report from the case because it should never have been put in there in the first place.

In addition, Mr. Proctor, who was never disclosed as a fact witness, in a surprise development, improperly injected factual testimony on public use during his depositions on his expert reports. Respectfully, the Court should exclude this testimony as well.

## II. REPLY TO FACTUAL BACKGROUND

### A. T-Mobile Failed to Disclose Narrowing of Its Prior Art Until Service of Expert Reports and Provided Suspect Documents.

In its Statement of Facts, T-Mobile argues that because VoIP-Pal was put "on notice" of the HotSpot@Home prior art system then VoIP-Pal was amiss by not focusing discovery on this system. However, T-Mobile fails to inform the Court that HotSpot@Home was only one item in a mountain of prior art disclosed on July 26, 2022, in the Invalidity Contentions served on VoIP-Pal. In fact, HotSpot@Home was identified as one of twenty-three prior art systems that the defendants identified.[1] In addition, T-Mobile also fails to mention that it also identified eight alleged prior art non-patent technical references and twenty-three patents and patent publications in the Invalidity Contentions.[2] The prior art that VoIP-Pal was put "on notice" of would have required the deposition of an unknown number of potential witnesses, perhaps hundreds of inventors, developers, and engineers. T-Mobile's attempt to force VoIP-Pal into wasting its limited resources by putting VoIP-Pal on a wild goose chase – chasing down prior art discovery without knowing which would be selected by T-Mobile – did not succeed.

It needs to be noted that VoIP-Pal attempted to obtain fact discovery on the contended prior art, in tandem with the narrowing of VoIP-Pal's asserted claims, VoIP-Pal unsuccessfully tried to

---

[1] Dkt. No 141-2 at 19-20.
[2] Dkt. No. 141-2 at 5-7 and 18.
3

persuade T-Mobile to narrow its prior art to at least a subset of the material that it was intending to rely upon.  However, T-Mobile prevaricated and delayed the narrowing of its prior art until after fact discovery had closed.[3]  VoIP-Pal did not learn that HotSpot@Home was the only prior art of any kind T-Mobile was asserting in the litigation until February 9, 2023, after the close of fact discovery, when T-Mobile served the opening expert report of Mr. Proctor.[4]

T-Mobile points out that it produced product requirement documents during fact discovery, one for a router and another for a handset, which were included as part of their Opposition.[5]  The document on the WiFi router, which sits between the handset and the T-Mobile infrastructure, serves as a pass-through device.  The handset document produced is a draft, with numerous redlines throughout the document, and T-Mobile has not produced a final version.  Indeed, the product requirement document produced for the handset should be given no weight at all as evidence of HotSpot@Home for the simple reason that it is a draft dated *after* October 23, 2006, the public use date alleged by T-Mobile for the system.[6]

T-Mobile fails to explain why a product requirements documents for a UMA handset would be in a redlined, draft form after the purported launch date of the product.  Furthermore, T-Mobile fails to point out the obvious: these two requirement documents do not even mention HotSpot@Home.[7]  Notably, the Hamade declaration does not mention these requirement documents and does not connect these product requirement documents to a product called HotSpot@Home.[8]  The router and handset product requirement documents were the only such

---

[3] *See* Exhibit 10.
[4] *See* Dkt. No. 141-6.
[5] Dkt. No. 175 at 6.  Dkt. Nos. 175-16 and 175-17.  *See* Dkt. No. 175, Table of Exhibits (Exhibits O & P).
[6] Dkt. No. 175 at 2.  Dkt. No. 175-17 at 1 (Date: 2007-09-30) (strikeouts accepted).
[7] *See* Dkt. Nos. 175-16 and 175-17.
[8] Although Ms. Hamade is listed as one of the authors, she does not mention this product requirement document in her declaration.

4

documents produced by T-Mobile to VoIP-Pal and the only such documents provided in its opposition. On a related note, no requirements documents were produced for HotSpot@Home of any of the internal T-Mobile infrastructure components that connect the caller to the callee, even though Mr. Proctor testified that he reviewed infrastructure documents from multiple vendors.[9] As discussed previously, no software, hardware, or firmware was produced by T-Mobile for HotSpot@Home to determine whether these requirement documents were actually followed, even assuming they were for the alleged prior art product.[10] T-Mobile has not met its burden of providing evidence of the system's design and functionality for its material components on or before the critical date.

Finally, T-Mobile rehashes its allegations that VoIP-Pal knew of HotSpot@Home. VoIP-Pal has already responded to these allegations in its opposition to T-Mobile's motion to amend its answer and counterclaims.[11] As discussed in VoIP-Pal's opposition to the motion to amend, the evidence that T-Mobile believes it has shown that VoIP-Pal's predecessor, Digifonica, knew about HotSpot@Home is inconclusive. First, when questioned about his reference in an email to a "[T]-Mobile hotspot," Johan Emil Bjorsell, one of the inventors of the patents-in-suit, testified that it could be "one of two things."[12] Second, T-Mobile provides no support for its assertion that its HotSpot@Home was the only T-Mobile service that offered WiFi calling functionality circa 2008.[13] Indeed, Mr. Bjorsell testified that his reference in the email was merely to "some sort of

---

[9] *See* Exhibit 11 at 150:2—151:15.

[10] T-Mobile complains that VoIP-Pal is unreasonable because it argues that VoIP-Pal was asking T-Mobile to resurrect a defunct system. T-Mobile could have done any number of things to try to meet its burden short of rebuilding HotSpot@Home, including producing one or more handsets for examination by VoIP-Pal's expert or producing relevant code from handsets and infrastructure. T-Mobile has not done so.

[11] *See* Dkt. No. 101 (Plaintiff VoIP-Pal.Com, Inc.'s Opposition to T-Mobile's Amended Motion to Amend Its Answer and Counterclaims to Add Allegations of Inequitable Conduct).

[12] *Id.* at 5.

[13] *Id.*

5

T-Mobile service that had wifi."[14]  Third, Mr. Bjorsell testified that he was not even the one who actually tested the T-Mobile WiFi calling service.[15]  Thus, T-Mobile has no sound basis to conclude that the T-Mobile service that Digifonica actually used in 2008 was HotSpot@Home.

### B.  T-Mobile Relies on Incompetent and Unauthenticated Evidence.

The Hamade declaration, and most of T-Mobile's briefs, contain numerous assertions regarding HotSpot@Home that rely almost exclusively on a document described as the UMA technical specification.  The UMA specification is actually a collection of three unauthenticated documents and, therefore, improper for inclusion in an expert report.  Rule 901 provides that a document may be authenticated by "evidence sufficient to support a finding" that it is "what its proponent claims."[16]  While Rule 901 does not require conclusive proof of authenticity, it requires at least some evidence sufficient to support a finding that the evidence in question is what the proponent claims it to be.[17]  The Hamade declaration does not attach the UMA specification referenced as part of her declaration and, therefore, does not lay any foundation for what T-Mobile produced during fact discovery on this specification.  The UMA specification produced by T-Mobile during discovery is apparently taken from documents archived on the Internet, and the documents internally refer to a consortium of companies that put together these materials.[18]  As the testimony of Professor Emeritus Vojin Oklobdjza confirms, there is no ISBN number on these

---

[14] *Id.*
[15] *Id.*
[16] Fed.R.Evid. 901.
[17] *See United States v. Arce,* 997 F.2d 1123, 1128 (5th Cir.1993).
[18] Exhibit 12 at 321:10 – 335:16.  There is no evidence put forward by T-Mobile that the consortium that allegedly drafted the UMA specifications produced either a *de jure* or *de facto* standard.  T-Mobile's expert has provided opinions that the UMA specification was later adopted by 3rd Generation Partnership Project (3GPP), an umbrella group that develops technical specifications for mobile communications; however, this too is unsubstantiated since T-Mobile has supplied no evidence of any 3GPP adoption resolutions or committee meeting minutes to substantiate that claim or the date of such adoption on or before the critical date.  Furthermore, the specific 3GPP specifications (that spring for the first time in Mr. Proctor's opening report) are absent from T-Mobile's invalidity contentions, never mentioned in the Hamade Declaration, and never mentioned in the requirements documents for either the handset or the router. (Dkt. Nos. 175-16 and 175-17).

documents, and there is no evidence provided by T-Mobile that they were publicly accessible on or before the critical date for the asserted patents so that a POSITA would have been able to connect the relevant content of the UMA specifications to HotSpot@Home.[19]  A common issue with documents purportedly describing HotSpot@Home is that it is not known where many documents came from and whether they are authentic.  Neither in its opposition to VoIP-Pal's motion for summary judgment nor in two years of litigation has T-Mobile taken steps to authenticate the documents it contends are the UMA specification that engineers allegedly followed in the design of HotSpot@Home.  For these additional reasons, the UMA specifications should be stricken from Mr. Proctor's report.

### III.   REPLY TO ARGUMENT

Respectfully, the Court should exclude Mr. Proctor from testifying as a fact witness.  An instructive case where Apple's expert witness was allowed to provide testimony on his personal knowledge of a prior art system is *Personalized Media Communications, LLC v. Apple, Inc.,* which shows what a defendant needs to do to properly notice an expert witness who has personal knowledge of prior art.[20]  According to the facts in *Personalized Media Communications,* before the end of fact discovery, Apple's expert witness was identified with his contact information in Apple's initial disclosures as a witness for his knowledge related to prior art.[21]  Mr. Proctor, however, was never disclosed in T-Mobile's initial disclosures.  Furthermore, Apple's expert witness gave "a detailed roadmap" of his personal experience with the prior art system through his employment in his expert report.[22]  Mr. Proctor, on the other hand, never even mentioned his personal experience with HotSpot@Home in his expert report.  Finally, Apple disclosed its expert's personal knowledge of the prior art system weeks before serving his report and weeks

---

[19] *Id.*
[20] *Personalized Media Communications, LLC v. Apple, Inc.,* No. 2:15-cv-01366-JRG-RSP, 2021 WL 2696662 (E.D. Tex. Feb. 23, 2021).
[21] *Id.* at *3-*4.
[22] *Id*. at *4.

before his deposition.[23]  Unlike Apple, T-Mobile never disclosed Mr. Proctor's personal knowledge concerning HotSpot@Home until he surprised VoIP-Pal with his testimony during his deposition.  For these reasons and the reasons in VoIP-Pal's opening brief, Mr. Proctor should be precluded from testifying as a fact witness regarding HotSpot@Home.

The Court also should strike the sections of the expert report improperly injecting publication prior art.  T-Mobile tries to persuade the Court that its facts are no different than in *Rec Software USA, Inc. v. Bamboo Sols., Corp.*[24]  T-Mobile has materially different facts.  In *Rec Software USA*, two operating systems, OS/2 and SunOS 4.0+, were disclosed as prior art systems in the defendant's invalidity contentions.[25]  The defendant's expert included the "Four Books" in his expert report.[26]  The court's order described the four books and where they are located in the expert report, as follows:

- H.M. DEITEL AND M.S. KOGAN, THE DESIGN OF OS/2 (discussed at pages 59-66 of the Kogan Report);
- JAMES ARNOLD, SHARED LIBRARIES ON UNIX SYSTEM V (discussed at pages 75, 78-81 of the Kogan Report);
- CURTIS B. DOWNING ET AL., TRANSPARENT IMPLEMENTATION OF SHARED LIBRARIES (discussed at pages 75, 77-78 of the Kogan Report);
- UNIX PROGRAMMER'S REFERENCE MANUAL (discussed at pages 119, 130-131, 164 of the Kogan Report).[2]

Two of these books are treatises, one of them co-authored by the defendant's expert, Mr. Kogan. The other two are programmer reference manuals.  Each of these books is clearly background material that are discussed in only a few pages of Mr. Kogan's report, and the district court found that these books did not warrant being stricken from the report.

In contrast, Mr. Proctor has gone far beyond citing a few reference materials for background material to help explain certain technical issues.  Mr. Proctor has taken the UMA

---

[23] *Id.*
[24] *Rec Software USA, Inc. v. Bamboo Sols., Corp.,* No. 2:11-cv-554, Dkt. 281 (W.D. Wash. Aug. 15, 2012).  *See* Exhibit 13.  T-Mobile erroneously uses "Mamboo [sic] Sols., Corp" for the name of the defendant in its brief.
[25] *Id.* at 2-3.
[26] *Id.*

specification, an unauthenticated third-party specification taken from Internet archives, and five 3GPP specification drafts, and created an entire expert report around them, including almost 500 pages of exhibits on the UMA specification. The term "UMA" is used 287 times in his report. In addition, Exhibit C to Mr. Proctor's report on the invalidity of the '234 patent is a new claim chart based on the UMA specification that is 189 pages long.[27] Exhibit D to Mr. Proctor's report on the invalidity of the '721 patent is a new claim chart based on the UMA specification that is 304 pages long.[28] Mr. Proctor treats these new materials as if they were design documents for the HotSpot@Home system itself – they are not. The other cases cited by T-Mobile to persuade the Court also are distinguishable on the same basis; *i.e.,* on the unprecedented breadth and scope of Mr. Proctor's reliance on printed publications to effectively stand in the shoes of the prior art system.

The five 3GPP specifications are discussed in sixteen pages of Mr. Proctor's report at ¶¶ 205-224 purportedly to show that "T-Mobile's current accused system is materially identical to the prior art HS@H system."[29] However, Mr. Proctor testified that the UMA handsets allegedly provided by T-Mobile were incompatible with T-Mobile's future developed systems and (without factual support in the record) opined that there were many iterations:

> Q: . . . The dual-mode handsets for the HotSpot@Home, when the system was discontinued, did those handsets continue to work for a WiFi call?
>
> A: . . . No, they -- they evolved the system to HotSpot@Home 2.0 and then GAN – and called – and – and then GAN Lite and – and then it – it evolved with – they – they basically evolved the system to the standardized generic access rather than the ***private branding*** of UMA, not private . . . . .[30]

---

[27] Dkt. No. 143-7.
[28] *Id.*
[29] Dkt. No. 176 at 10.
[30] Exhibit 11 at 137:14—138:15 (emphasis added).

By his own testimony, Mr. Proctor confirmed that UMA was a private specification from a private consortium. Also, Mr. Proctor essentially confirmed that, however, HotSpot@Home may have worked in practice when released, these products were a dead-end technology that could not be "materially identical" to the current system accused by VoIP-Pal. While T-Mobile has provided discovery on the system accused of infringement, as discussed above, T-Mobile has provided scant design and development documents on the system it labels HotSpot@Home and no design and development documents on HotSpot@Home 2.0 or any alleged further iterations. But there are no facts to support the unsupported statement that HotSpot@Home "evolved" or is "materially identical" to the modern T-Mobile system, as asserted by Mr. Proctor. In its desperation to provide some tangible evidence of the operation of HotSpot@Home, T-Mobile has gone too far – arguing that a prior art system, put together circa 2006, is "materially identical" to the modern systems used seventeen years later that VoIP-Pal accuses of infringement. There is absolutely no evidence to support this far-fetched contention.

## IV.     CONCLUSION

Accordingly, the Court should grant VoIP-Pal's request to exclude T-Mobile Mr. Proctor's testimony and to strike and exclude portions of Mr. Proctor's expert report, for the reasons provided in VoIP-Pal's opening brief and in this Reply.

| | |
|---|---|
| Dated:  August 1, 2023 | Respectfully submitted, |

/s/Lewis E. Hudnell, III
Lewis E. Hudnell, III
lewis@hudnelllaw.com
Nicolas S. Gikkas
nick@hudnelllaw.com
Stanley H. Thompson, Jr.
stan@hudnelllaw.com
Hudnell Law Group P.C.
800 W. El Camino Real Suite 180
Mountain View, California 94040
T: 650.564.3698
F: 347.772.3034

Sean Franklin Parmenter
sean@parmenterip.com
Parmenter Intellectual Property Law, PLLC
8980 N Pine Hollow Drive
Cedar Hills, Utah 84062
T: 925.482.6515

William M. Parrish
bparrish@stradlinglaw.com
Stradling Yocca Carlson & Rauth
500 W. 2nd Street
Austin, Texas 78703
T: 512.788.5020

**ATTORNEYS FOR PLAINTIFF
VOIP-PAL.COM, INC.**

# CERTIFICATE OF SERVICE

The undersigned certifies that on August 1, 2023, VoIP-Pal filed with the Court's ECF system and served via e-mail to its counsel of record who are deemed to have consented to electronic service with a copy of the forgoing **PLAINTIFF VOIP-PAL.COM'S REPLY IN SUPPORT OF PLAINTIFF VOIP-PAL.COM'S MOTION TO STRIKE AND EXCLUDE PORTIONS OF T-MOBILE'S EXPERT INVALIDITY REPORT AND EXPERT TESTIMONY FOR FAILURE TO MEET APPLICABLE DISCLOSURE REQUIREMENTS** pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5.2(e) at the following addresses:

| | |
|---|---|
| **PERKINS COIE LLP**<br>Amanda Tessar<br>ATessar@perkinscoie.com<br>1900 Sixteenth Street, Suite 1400<br>Denver, Colorado 80202-5255<br><br>Martin E. Gilmore<br>MGilmore@perkinscoie.com<br>500 W 2nd St 1900<br>Austin, Texas 78701 | TMobile-VOIP@perkinscoie.com |
| **GILLAM AND SMITH, LLP**<br><br>Melissa Richards Smith<br>melissa@gillamsmithlaw.com<br>303 South Washington Avenue<br>Marshall, TX 75670 | melissa@gillamsmithlaw.com |

By: */s/Lewis E. Hudnell, III*
Lewis E. Hudnell, III

1