IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| VOIP-PAL.COM, INC., <br><br> Plaintiff, <br><br> v. <br><br> T-MOBILE USA, INC., <br><br> Defendant. | CIVIL ACTION NO. 6:21-CV-674-ADA <br><br> ▆▆▆▆▆▆▆▆▆▆▆▆ |

**T-MOBILE'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS
BASED ON VOIP-PAL'S VIOLATION OF
THE COURT'S ORDER DATED FEBRUARY 23, 2023**

TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. SANCTIONS ARE WARRANTED ........................................................................................ 2

    A. The Order Does Not Support The "Carve-Outs" That VoIP-Pal Finds In It .................. 2

    B. VoIP-Pal Also Makes Up Entirely New Carve-Outs That It Does Not Even Bother To Support In The Order ...................................................................................... 4

    C. VoIP-Pal's Litany Of Other Excuses Lack Merit ............................................................ 5

    D. VoIP-Pal Downplays, Rather Than Denies, Its Failures ................................................. 7

    E. T-Mobile Has Been Prejudiced By VoIP-Pal's Conduct ................................................. 8

    F. VoIP-Pal Is Wrong That The Court Already Decided To Send This Sanctions Motion To A Special Master ........................................................................................... 10

III. CONCLUSION AND REQUESTED RELIEF ......................................................................... 10

## I. INTRODUCTION

VoIP-Pal's opposition misses the point. The day has long since passed to negotiate what documents VoIP-Pal must produce on a line-by-line basis, and that is *not* what T-Mobile is asking the Court to do through its motion for sanctions. VoIP-Pal has already promised over and over again to fix the multitude of deficiencies of its varying logs, only to repeatedly break those promises. Indeed, that is exactly what happened in June, when T-Mobile filed a ***discovery motion*** asking the Court to compel a proper privilege log and production of documents wrongly withheld. The Court at that time suggested a discovery master, but VoIP-Pal avoided that suggestion through its promise to produce further documents and fix its log. VoIP-Pal did not do so, and T-Mobile has at this point lost faith that VoIP-Pal will ever do so. VoIP-Pal's suggestion that it should be able to avoid sanctions and, on the eve of trial, now start over from scratch with a special master ignores that this Court has the power to enforce its Order—and T-Mobile asks that it do so.

VoIP-Pal's opposition demonstrates precisely why this Court's intervention is necessary. VoIP-Pal intentionally misreads this Court's order to an illogical extreme to defend its approach. It minimizes and dismisses T-Mobile's legitimate concerns about large-scale problems that remain after ***seven*** rounds of logs (and VoIP-Pal's intentional withholding of documents ordered produced) as "fuss[ing]," "gripes," and "inherent inaccuracies associated with large-scale privilege reviews." Opp. at 2. It takes positions regarding the scope of its waivers that make no sense, such as saying that work product protects expert communications ***even where Mr. Malak was copied*** on those communications. *Id.* at 16. It debates T-Mobile's inequitable conduct defense on the merits, missing the point of this motion. *Id.* at 3-4. VoIP-Pal's pleas for more chances to fix its mistakes should be rejected as what they are: further excuses by a party that will clearly ***never*** voluntarily comply with the Order.

## II. SANCTIONS ARE WARRANTED

### A. The Order Does Not Support The "Carve-Outs" That VoIP-Pal Finds In It

Because Mr. Malak repeatedly disclosed privileged communications to outsiders and instructed VoIP-Pal's agents to withhold disclosures to its patent prosecutors, the Court *required* VoIP-Pal to produce otherwise-privileged documents related to "litigation strategy, damages/license/valuation, prosecution," "infringement," "Mr. Malak's role in the conception of the alleged invention, inventorship, claim-drafting, prior art analysis, litigation funding," "continuation strategy," "disclosure obligations, T-Mobile and UMA prior art, Wi-Fi calling systems and standards, and any instructions to withhold art from patent prosecutors." Dkt. 95 at 6. For any documents that VoIP-Pal continued to withhold, the Court also ordered VoIP-Pal to provide "sufficient detail to allow T-Mobile to assess the propriety of any [continuing] claim of privilege." *Id.* at 7. Nevertheless, based on a shaky reading of the Order, VoIP-Pal refuses to produce documents falling into many of the categories.

In doing so, VoIP-Pal says that T-Mobile mischaracterizes the Court's Order, but it is VoIP-Pal itself that plays word games that stretch the Order to its breaking point. Challenge 2 of T-Mobile's February motion to compel, for instance, related to "VoIP-Pal attorney David Gileff openly (but selectively) testif[ying] at deposition regarding normally-privileged topics such as pre-suit investigation, prior-art searching, and prosecution." Dkt. 95 at 2. The Court held that Mr. Gileff had not waived privilege through this testimony. *Id.* at 6. VoIP-Pal, however, broadens the Court's holding in a way that ***omits Mr. Gileff entirely***, trying to turn the Court's ruling into a "get-out-of-jail-free" card regardless of what other waivers—besides Mr. Gileff's testimony—might apply for these topics. Opp. at 5 ("Challenge 2 covers 'pre-suit investigation, prior-art searching, and prosecution.'"). VoIP-Pal does so even though the Court more generally held that VoIP-Pal ***had waived privilege*** with respect to the broad categories of "litigation strategy,"

"prosecution," and "prior art analysis" through Mr. Malak's actions.  Dkt. 95 at 6 (challenges 1 and 3).

The same is true for challenge 4, which was based on VoIP-Pal's claim to a priority date supported solely by a self-serving initial privilege log that purported to show when some of the inventors first sent invention information to its prosecutors.  Dkt. 95 at 2.  That the Court did not find a waiver for a very narrow category of 2008 documents (that VoIP-Pal has said are helpful to its case) based on VoIP-Pal's litigation positions, but that finding does ***not*** supersede the Court's separate finding of a subject matter waiver—again, based on Mr. Malak's actions—for the much broader category of ***all*** documents related to conception and reduction, most of which had ***not*** been logged as of the date of the Order.  Dkt. 95 at 6 (challenge 3: "VoIP-Pal shall produce any documents that it previously withheld as privileged, whether logged or not, relating to ... Mr. Malak's role in the conception of the alleged invention, inventorship, claim-drafting, prior art analysis, litigation funding, and continuation strategy.").

VoIP-Pal compounds the prejudice from its indefensible reading of the Order by stuffing more into those categories where it won than they can plausibly contain.  T-Mobile identified two exemplary egregious instances of this phenomenon, involving documents that were withheld purportedly because they involved "pre-suit analysis"—even though those documents actually post-dated the complaint by years.  *See* Mot. at 11-12 (citing Ex. I at 70 (email dated July 15, 2022 with a subject line "Memo re asserted [mobile gateway patent] claims"); *id.* at 102 (email dated November 11, 2022 with a subject line "Comparable patent licenses").  These are, of course, not the only instances of VoIP-Pal's games in this regard, but VoIP-Pal failed to address even these two examples in its opposition, much less the wider overall problem.

**B.     VoIP-Pal Also Makes Up Entirely New Carve-Outs That It Does Not Even Bother To Support In The Order**

Separately and apart from VoIP-Pal's misreading of the Order, VoIP-Pal also makes up carve-outs from whole cloth. For instance, VoIP-Pal argues that, where documents involving the waived subject matter include an expert, the subject matter waiver found by the Court necessarily no longer applies because those documents are covered by work product privilege. Opp. at 11-12. The Court's Order, however, was not so narrow. The Court held that "VoIP-Pal has waived privilege," and it did not specify that this waiver was limited to attorney-client communications. Dkt. 95 at 6. Moreover, even if VoIP-Pal were correct about the scope of the Order, which it is not, VoIP-Pal's argument is divorced from the facts: the documents over which it claims work product protection are all ones where **Mr. Malak was copied**. It is for that reason that privilege is unequivocally waived, regardless of whether work product immunity otherwise would have applied. *See CEF Funding, LLC v. Sher Garner Cahill Richter Klein & Hilbert, LLC*, No. 09-cv-662-LMA-SS, 2011 WL 13202961, at *5 (E.D. La. Jan. 6, 2011) (where client authors or receives a communication, "the waiver of the attorney-client privilege extends to the work-product protection and the communications must be produced"). The cases VoIP-Pal cites (*Brady*, *Lenz*, and *Handgards*) are therefore wholly inapplicable: they involved neither experts nor communications to the client by the attorney of the purported work product.

VoIP-Pal also claims that it does not need to produce logged documents that it has since unilaterally determined are "irrelevant" (even when its own log descriptions do not support this). This argument does not make sense in light of what has actually happened here, however. First, VoIP-Pal has previously produced many irrelevant documents without comment, so it is unclear why it is now suddenly hesitant to do so. Second, the Court explicitly ordered VoIP-Pal to produce "any privileged documents that were not previously produced, whether or not logged, including,

-4-

but not limited to, the 61,000 of Mr. Malak's emails." Dkt. 95 at 6. The Court did not permit VoIP-Pal to conduct a secondary assessment for relevance at its own discretion. Finally, and relatedly, VoIP-Pal already unilaterally excluded 20,000 of Mr. Malak's emails (over T-Mobile's objection) on the basis that they "concerned matters unrelated to VoIP-Pal or its patents." Opp. at 7. It makes no sense that VoIP-Pal now claims (sometimes contradicting its log entries) that documents it did deign to actually log are also allegedly irrelevant.

## C.    VoIP-Pal's Litany Of Other Excuses Lack Merit

Despite VoIP-Pal's claims to the contrary, willfulness is required *only* for sanctions that are case-terminating. *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1343-44 (5th Cir. 2013). In the Fifth Circuit, sanctions such as "dismissing a claim or entering default judgment"—i.e., types of sanctions that T-Mobile is not seeking here—require a finding of willfulness or bad faith. *Id.* Although the facts here support a finding of bad faith, no such finding need be made by the Court because, for less severe sanctions, "including deeming certain facts established for purposes of the litigation, the Fifth Circuit applies a less-rigorous standard, requiring only that the sanction be '[j]ust and [f]air,' that it have a 'substantial relationship' to the facts sought to be established by the discovery, and that it meet Rule 37's goals of punishment and deterrence." *Id.* at 1343.

VoIP-Pal also incorrectly claims that T-Mobile "failed to give VoIP-Pal any warning" that it would be seeking fees and a jury instruction through this motion. Opp. at 18. But T-Mobile did tell VoIP-Pal that it would seek fees associated with the entire dispute.[1] Driving home that VoIP-

---

[1] At the meet-and-confer for this motion, T-Mobile did not specifically inform VoIP-Pal that it would seek a jury instruction as a sanction, but T-Mobile did indicate that it would seek all fees. Gilmore Decl., ¶2. Even VoIP-Pal also seems to acknowledge that at least some portion of the fees sought were discussed. Dkt. 223-4 at ¶10 (VoIP-Pal asked "whether T-Mobile was seeking any other relief besides an adverse inference ***and fees for bringing the Motion***") (emphasis added). Notably, T-Mobile's approach on this issue is consistent with what it has done throughout the life of this dispute. For instance, in its June motion to compel (later withdrawn because VoIP-Pal said it would voluntarily comply with the Order), T-Mobile sought "fees and costs for … past and future depositions, all review by T-Mobile of VoIP-Pal's

Pal's meet-and-confer complaints are nothing more than an excuse, moreover, VoIP-Pal identifies nothing that it would have done differently if had appreciated the full scope of relief sought through the present sanctions motion. And nothing that was said (or, as VoIP-Pal contends, not said) at the meet-and-confer can *ex post facto* excuse VoIP-Pal from having complied with the Order.

Finally, there are no participation trophies for the half-hearted efforts made to comply with the Order here: the Court's Order is clear and mandatory. VoIP-Pal nonetheless points to the efforts that it has made, including the hours spent by contract reviewers, to comply with the Order. *See, e.g.*, Opp. at 5-6. VoIP-Pal does not, of course, acknowledge the hours spent by T-Mobile in trying to get VoIP-Pal to comply. And VoIP-Pal does not detail the instructions given to its reviewers or the quality control efforts that it undertook to ensure material compliance with the Order, nor can it stay with a straight face that it has materially complied. Indeed, many of the privilege justifications prepared by those contract reviewers are the very proof that VoIP-Pal is wrongly withholding documents, since many of the descriptions ***explain*** that the documents relate to subjects that are within the scope of the waiver found by the Court. *See* Mot. at 10-11. Exhibits H & I—the color-coded version of the log that T-Mobile's counsel also spent many hours preparing—stand as a testament to that very fact, showing ***thousands*** of documents for which privilege had been waived or not established, many for multiple different reasons.[2]

---

belatedly produced documents, all time spent by T-Mobile trying to understand VoIP-Pal's various privilege logs (and identifying their multiple deficiencies), all time spent by T-Mobile relating to motion practice on email and privilege issues," and other fees. Ex. X at 5.

[2] Separately, VoIP-Pal repeatedly argues that T-Mobile agreed that VoIP-Pal need not produce documents related to the Hudnell Firm's fee arrangements. *See* Opp. at 1, 11. T-Mobile never made any such agreement (instead, it returned inadvertently produced Hudnell invoices as a courtesy ***before*** the Court had decided the waiver motion), but this issue does not matter here: in deference to the fact that VoIP-Pal understood there to be such an agreement, T-Mobile does not base any part of its sanctions motion on VoIP-Pal's failure to produce information about fee arrangements with its current litigation counsel. This is a non-issue.

**D.     VoIP-Pal Downplays, Rather Than Denies, Its Failures**

Rather than addressing the scope of the problems with its approach, VoIP-Pal addresses a smattering of the examples given by T-Mobile, seemingly to make the T-Mobile's very point: that VoIP-Pal will produce documents only when T-Mobile holds it hand, document-by-document to force compliance. But that approach again misses the point—that T-Mobile should not have to do so, and that those efforts have reached the end of what is possible.

Just as importantly, VoIP-Pal notably does not dispute in its opposition any of the following:

- that it continues to withhold documents that it logged with descriptions that suggest that they *are* relevant, but has since announced are supposedly not (Opp. at 11);
- that it continues to withhold hundreds of emails that T-Mobile challenged through its color-coding as not properly withheld (Mot. at 10);
- that its initial privilege logs failed to offer subject-matter descriptions sufficient to test VoIP-Pal's privilege claims, identify attorneys, or provide any affiliation of any individuals (*see* Mot. at 3);
- that its "list of names" failed to accurately identify attorneys for whom it claims attorney-client privilege (*see* Mot. at 8, fn.5; 18);
- that its promised remedied logs and productions often came late (*see* Mot. at 7);
- that 20,000 of its initial 61,000 documents *still* remain unproduced and unlogged, despite the Court's Order requiring it to do so, allegedly because they are not relevant—although lack of relevancy is also one of VoIP-Pal's excuses for not producing documents that it *did* log (*see* Mot. at 7);
- that it miscategorized emails that it suggests relates to "pre-suit investigation," but actually long post-date its complaint (*see* Mot. at 17); and
- that it inconsistently withheld some and produced other members of the exact same email threads (*see* Opp. at 16).

Rather, VoIP-Pal attempts to characterize its many widespread failings as "irrelevant," "immaterial," or "trifling." Opp. at 1, 2. Such minimization of the widespread problems with VoIP-Pal's approach is nothing short of offensive.

As to its failure to identify attorneys for whom it claims privileged communications, VoIP-Pal's opposition again misses the point. It is **VoIP-Pal** who claims that certain of its communications are covered by attorney-client privilege and has the burden of substantiating that claim. Even so, and even in the face of the Court's Order requiring it to do so, VoIP-Pal has still ***never*** identified attorneys that it claims provided VoIP-Pal with legal advice beyond those that have appeared in this case.

VoIP-Pal also points out that emails with no attorney in the to, from, or cc fields "may still be privileged if other emails in the thread contained privileged information and the email thread only includes people within a privileged relationship." Opp. at 6. While that may be true, VoIP-Pal ignores that the entire purpose of a privilege log is to substantiate and explain such dubious claims of privilege. But, here, VoIP-Pal rests on its deficient logs until challenged, and only then does it attempt to substantiate its claims in broad brush. For example, in response to T-Mobile's motion for sanctions, VoIP-Pal argues that one individual for whom it withholds documents, Konstantin Kropivny, was engaged "to assist with VoIP-Pal's prosecution and litigation efforts" and attaches his retention agreement. Setting aside that any privilege that might have been attached has been waived, this argument is also simply too late. If VoIP-Pal wanted to present arguments about Mr. Kropivny's role, it should have done so before the Court's Order.

### E.  T-Mobile Has Been Prejudiced By VoIP-Pal's Conduct

VoIP-Pal's conduct has indisputably prejudiced T-Mobile. Since its initial improper privilege log regarding conception and reduction to practice, VoIP-Pal has continuously withheld and improperly sought to conceal evidence of its inequitable conduct before the USPTO. *See* Mot. at 18-20. VoIP-Pal's opposition ignores that it was only through VoIP-Pal's inadvertent production of an email from ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ that T-Mobile even learned of VoIP-Pal's inequitable

conduct.  *Id.*  Had it not slipped up, T-Mobile would never have known.  Even then, however, VoIP-Pal attempted to claw-back the document in question and took the indefensible position that an email from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ was supposedly privileged.  VoIP-Pal, moreover, ignores the many hours that T-Mobile has spent disputing VoIP-Pal's improper clawbacks, filing motions, negotiating with VoIP-Pal, attempting to understand shoddy and unreadable logs, and generally doing everything possible to try (unsuccessfully) to get VoIP-Pal to comply with its discovery obligations and the Order.

Rather than address these issues, VoIP-Pal suggests that T-Mobile is not prejudiced because T-Mobile's inequitable conduct defense "lack[s] merit."  Opp. at 13.  VoIP-Pal may disagree on the merits, but now is not the time to adjudicate that dispute.  VoIP-Pal's arguments on the merits, moreover, cannot be reconciled with the evidence.  For instance, VoIP-Pal argues that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

-9-

Compliance with a court order is neither optional nor to be negotiated, but VoIP-Pal seems to fundamentally not understand that basic point. For instance, VoIP-Pal complains that T-Mobile would not accept its offer of partial compliance with the Order. Opp. at 18. VoIP-Pal states that it offered to "produce all of the conception, reduction to practice, and prior art analysis documents remaining on its privilege log" (*id.*), but: (a) its actual compromise offer was far less; and (b) this offer entirely ignores all of the other categories of documents that VoIP-Pal was required to produce, but did not. As to (a), what VoIP-Pal actually offered was a continuation of the Sisyphean journey where it would "re-review all the remaining documents on its privilege log in order to confirm which ones relate to conception/reduction to practice and prior art analysis and produce those documents." Dkt. 223-4 at 3. Having been down this path before many times, T-Mobile understandably declined this too-little-too-late offer. Either way, though, T-Mobile was under no obligation to "compromise" on the relief that it won from the Court due to VoIP-Pal's antics.

## F. VoIP-Pal Is Wrong That The Court Already Decided To Send This Sanctions Motion To A Special Master

VoIP-Pal's last-ditch argument, telling the Court that it has already refused to rule on T-Mobile's present motion, mischaracterizes the history here. In June, T-Mobile filed a motion to *compel* further production. The Court suggested that it would refer that dispute to a special master, but that is *not* the same motion now presented. Here, T-Mobile is *not* asking the Court to compel any production (the Court already did that in its Order, to no avail) or to review privilege log entries in detail. Instead, T-Mobile is asking this Court to hold VoIP-Pal accountable for its myriad bad acts. VoIP-Pal has had countless opportunities to comply with the Order, but it has failed at every turn, as the Court need not dig through every page of VoIP-Pal's disastrous logs to confirm.

### III.  CONCLUSION AND REQUESTED RELIEF

T-Mobile therefore requests that this Court grant its motion for sanctions.

| | |
|---|---|
| Dated: October 25, 2023 | Respectfully submitted, |

*/s/ Amanda Tessar*
Amanda Tessar
ATessar@perkinscoie.com
Kourtney Mueller Merrill
KMerrill@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255
Tel: (303) 291-2357
Fax: (303) 291-2457

Martin E. Gilmore (*Pro Hac Vice*)
MGilmore@perkinscoie.com
PERKINS COIE LLP
405 Colorado Street, Suite 1700
Austin, Texas 78701
Tel: (737) 256-6100
Fax: (737) 256-6300

Melissa R. Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM AND SMITH, L.L.P.
303 South Washington Avenue
Marshall, TX 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

**ATTORNEYS FOR DEFENDANT
T-MOBILE USA, INC.**

-12-

## CERTIFICATE OF SERVICE

I certify that on October 25, 2023, the documents filed with the Clerk of Court via the Court's CM/ECF system under seal in the above-captioned case were subsequently served on all counsel of record by electronic mail.

*/s/ Melissa R. Smith*
Melissa R. Smith
